# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 7, 2011 Session

## STATE OF TENNESSEE v. LOUIS DANCY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-06462    James C. Beasley, Jr., Judge**

---

**No. W2010-01986-CCA-R3-CD  - Filed June 26, 2012**

---

A Shelby County Grand Jury returned an indictment against Defendant, Louis Dancy, charging him with the second degree murder of Charles Williams.  Following a jury trial, Defendant was convicted of the offense and received a sentence of eighteen years and six months as a Range I, violent offender.  On appeal, Defendant argues that the trial court erred in giving the jury a sequential instruction, which charged the jury that it must first acquit Defendant of the greater offense before considering any lesser offense.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Michael R. Working, Memphis, Tennessee, (on appeal); and Michael Scholl and Michael Campbell, Memphis, Tennessee, (at trial), for the appellant, Louis Dancy.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; Muriel Malone and Kirby May, Assistant District Attorneys General; for the Appellee, the State of Tennessee

## OPINION

### I. Background

At approximately 10:40 a.m. on April 4, 2008, Officer Timeca Johnson of the Memphis Police Department was dispatched to an assault call where shots had been fired in front of Hattie's Grocery on South Lauderdale Street.  Because she was passing the area as

the crime occurred, she was able to respond within a minute. When Officer Johnson arrived on the scene, she saw Charles Williams, the victim, lying face down on the walkway in front of the business, and six or seven people were standing around. The victim was alive but unresponsive, so Officer Johnson rolled him over and determined that he had been shot in the pelvic area. She did not find any possessions on the victim. She assisted him until the fire department arrived.

Officer Johnson then interviewed witnesses and reviewed video footage from the surveillance cameras at Hattie's Grocery. She noted that some of the individuals in the video were still on the scene, and the video also showed Defendant and Laquisha Cosey at the scene. Officer Johnson later located a shell casing near her patrol car. She testified that there was a lot of gang activity in the area of the shooting.

Rachel Montgomery, the victim's aunt and guardian, testified that she learned of the shooting on her way to church and went to the scene. The victim's mother was there when Ms. Montgomery arrived, and emergency personnel were still working on the victim. Ms. Montgomery followed the ambulance to the Regional Medical Center where the victim remained for two weeks before he passed away. Ms. Montgomery explained that the victim was supposed to attend church with her that Sunday morning but stayed home because he had a headache. Ms. Montgomery later learned that the victim had walked to the store with Nakiel Addison to buy some cigarettes and pizza. She said that the victim also hung out with "Quick" Addison.

Dr. Marco Ross performed an autopsy on the victim. He determined that the victim had "sustained a gunshot wound to the abdomen for which he had multiple surgeries performed and had multiple complications resulting from the initial gunshot wound, that were the cause of his death." Dr. Ross testified that the victim developed an infection that became septic due to the injury to his intestines. The loss of blood also caused the victim to sustain brain damage.

Eleven-year-old Nakiel Addison testified that he was in front of Hattie's Grocery on April 6, 2008. He had walked to the store to get something to eat, but it was closed, and he waited there to see if it would open. Nakiel testified that the victim walked up and sat down. He knew the victim who was friends with his cousin, "Quick" Addison. Nakiel and the victim were talking and laughing with another friend when a woman walked up to the store and pulled on the door. She then asked Williams if they were laughing at her, and he responded that they were not. Nakiel saw the woman walk away and point to a man across the street. Nakiel testified that the man then walked up to the store and shot the victim. Nakiel ran home when he saw the gun and told his mother what had happened. While he was running, Nakiel saw the shooter run away as well.

Sergeant Steven Roach of the Felony Assault Unit drove to the Med with Detective Weddle on April 6, 2008, to check on the victim. He received the video and a statement from the store owner and reviewed the video. He also interviewed Quincy "Quick" Addison, Nakiel Addison, and Laquisha Cosey, who was Defendant's girlfriend. Sergeant Roach testified that Defendant was taken into custody in Cleveland, Mississippi, and Sergeant Roach drove there on April 28, 2008, and picked him up. Defendant then signed a waiver and gave a statement. Sergeant Roach testified that Defendant was very cooperative and admitted to the shooting. Defendant said that no one else was involved.

Defendant told Sergeant Roach that he had followed Ms. Cosey to the store where she was arguing with the victim. He said that the victim "kept hollering get your fat ass off my block," and Ms. Cosey said that she was tired of "these folks" constantly "picking" on her. Defendant said that he walked up and saw the victim "grabbing on his pants acting like he had a gun under his shirt," and the victim said, "[Y]ou ain't the only one who got a gun." Defendant told Detective Roach that he pulled a nine millimeter out of a black bag and fired one round. He then ran down an alley and tossed the gun. Defendant said that he ran to "Lemonyne Owen Park, I waited and laid low for a couple of days until I heard a partner say he was going to Cleveland, Mississippi."

Defendant told Sergeant Roach that he never saw a gun on the victim at the time of the shooting, but the victim and "Quick" Addison had robbed and shot at him in the past. He also said that they were known gang members and that police had taken drugs from them. Defendant also said that he had called police on the victim and Addison in the past. Sergeant Roach testified that he looked but did not find any police reports on these incidents. Defendant told Sergeant Roach that Defendant had a gun that day because he was going to his grandmother's house and had to "pass by where the 20/20 mob hang at." He was aware that they had "jumped" his brother-in-law, and he knew that he would be next.

## II. Analysis

Defendant contends that the trial court erred in giving the jury a sequential, acquittal-first jury instruction, which in essence told the jury that it could not consider any lesser-included offenses unless it first acquitted Defendant of the indicted offense of second-degree murder. He makes the following argument in his brief:

> The distinction between second degree murder and voluntary manslaughter involves a state of passion produced by adequate provocation. In a sequential first jury charge, the jury cannot consider a charge of voluntary manslaughter if the distinction between the two charges is only included in the latter offense. Manslaughter is a less culpable knowing killing than the knowing killing

required for second degree murder. If a jury is only asked to consider whether a knowing killing took place, that jury must stop at a conviction for second degree murder, without regard to any mitigating factors that would support a verdict for the lesser included offense of voluntary manslaughter.

"It is the duty of a trial judge to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)(citing *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975)). In other words, "a defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). In determining whether jury instructions are erroneous, this Court must read the entire charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

In *State v. Davis*, 266 S.W.3d 896 (Tenn. 2008), the Tennessee Supreme Court held that sequential, acquittal-first, jury instructions are proper. The Court held that

while a defendant is entitled by our constitution to have the jury charged on all offenses encompassed within the indictment and supported by the proof, our constitution does not go so far as to mandate the order in which those offenses are considered. Our constitution also does not prohibit the requirement that a jury first reach a unanimous verdict of acquittal with respect to a greater offense before it proceeds to consider a defendant's guilt of a lesser-included offense.

*Id.* at 905. The Supreme Court determined that an acquittal-first instruction did not offend a defendant's right to a jury trial under the Tennessee Constitution and that public policy is best served by such instructions. *Id.* at 905, 907.

Moreover, this Court has repeatedly upheld the use of sequential, acquittal-first jury instructions in cases involving second-degree murder and the lesser-included offense of voluntary manslaughter. *State v. Jeffrey Scott*, No. W2009-00707-CCA-R3-CD, 2011 WL 2420384, at *30-31 (Tenn. Crim. App. June 14, 2011) *perm. app. denied* (Tenn. Oct. 18, 2011); *State v. Chris Jones*, No. W2009-01698-CCA-R3-CD, 2011 WL 856375, at *15-16 (Tenn. Crim. App. Mar. 9, 2011) *perm. app. denied* (Tenn. Aug. 25, 2011); *State v. Mark Hines*, No. W2009-00450-CCA-R3-CD, 2010 WL 4286132, at *9-10 (Tenn. Crim. App. Oct. 27, 2010) *perm. app. denied* (Tenn. April 14, 2011); *State v. Shairiq Seabrooks*, No. W2008-00443-CCA-R3-CD, 2009 WL 3103792, at *12 (Tenn. Crim. App. Sept. 29, 2009) *perm. app. denied* (Tenn. Mar. 15, 2010); *State v. Billie Joe Welch*, No. E2005-02293-R3-CD, 2006 WL 2737830, at * 13-14 (Tenn. Crim. App., Sept. 26, 2006) *perm. app. denied* (Tenn. Feb.

26, 2007); *State v. Walfrido L. Rodriguez*, No. M2005-01351-CCA-R3-CD, 2006 WL 1626845, at * 3-4 (Tenn. Crim. App. June 7, 2006) *perm. app. denied* (Tenn. Oct. 30, 2006); and *State v. Ernest Gwen Humphrey*, No. M2003-01489-CCA-R3-CD, 2005 WL 2043778, at * 14 (Tenn. Crim. App., Aug. 24, 2005) *perm. app. denied* (Tenn. Feb. 6, 2006).

The sequential jury instruction did preclude the jury in this case from deliberating on the offense of voluntary manslaughter. However, our Supreme Court in *Davis* fully approved of this procedure, and we are unable to overrule a Supreme Court opinion.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE