IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 22, 2012

## PHEDREK DAVIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2003-D-2992      Seth Norman, Judge**

**No. M2011-01366-CCA-R3-CO - Filed July 23, 2012**

The Petitioner, Phedrek Davis, appeals from the Davidson County Criminal Court's summary dismissal of his petition for writ of error coram nobis. In this appeal as of right, the Petitioner contends that the coram nobis court erred by summarily dismissing his petition. Following our review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JEFFREY S. BIVINS, JJ., joined.

Phedrek Davis, Only, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

PROCEDURAL BACKGROUND

On August 31, 2005, a jury convicted the Petitioner of one count of assault, one count of premeditated first degree murder, and one count of attempted second degree murder, for which he received an effective sentence of life imprisonment plus fifteen years. On appeal, this court upheld the Petitioner's convictions. See State v. Phedrek T. Davis, No. M2006-00198-CCA-R3-CD, 2007 WL 2051446 (Tenn. Crim. App. July 19, 2007) ("Davis I"). Our supreme court granted permission to appeal and affirmed the Petitioner's convictions and sentences. See State v. Davis, 266 S.W.3d 896 (Tenn. 2008) ("Davis II").

During the trial, the victim in the attempted second degree murder charge, Eula Beasley, testified that he witnessed the Petitioner approach the murder victim, slap her across the face, and say, "[B]itch, I'm going to get you, don't be in this house when I come back." Id. at 898. The Petitioner left, returned a short time later, and shot at the victim and Mr. Beasley. Id. Mr. Beasley testified on direct examination that he was "not one hundred percent positive" that the Petitioner used the word "kill" when he threatened the victim but that "it might have been something like that." Davis I, 2007 WL 2051446, at *14. Mr. Beasley was shown a copy of his statement to police in order to refresh his recollection. Id. Mr. Beasley then testified that he told the police that the Petitioner had said that "he was going to kill [the victim] when he come [sic] back, he was going to shoot up the house and everything." Id. When asked if the Petitioner actually said that, Mr. Beasely responded, "Yes, ma'am, I think so." Id. Mr. Beasley's statement had been reduced to writing by Detective E.J. Bernard. Id. at *15. Mr. Beasley testified that he reviewed the written statement and that it was accurate. Id.

In 2009, the Petitioner filed a petition seeking post-conviction relief and alleging that "newly discovered evidence prove[d] that the State solicited damaging perjury during his initial trial, thereby violating his constitutional rights." Phedrek T. Davis v. State, No. M2009-01616-CCA-R3-CD, 2010 WL 1947379, at *1 (Tenn. Crim. App. May 14, 2010), perm. app. denied, (Tenn. Nov. 10, 2010) ("Davis III"). The Petitioner alleged that Mr. Beasley perjured himself when he testified "that he had initialed the statement after confirming its accuracy." Id. The Petitioner argued that Detective Bernard "was the true author of the 'EB' (Eula Beasley) on the police report" and attached "a recent report from a handwriting expert" to support his claim. Id. The post-conviction court summarily dismissed the petition because "the issue of Mr. Beasley's possible perjury regarding the police report had been previously determined." Id.

In affirming the post-conviction court's decision, this court stated the following:

During his trial and appeal, the Petitioner had meaningful opportunities to introduce evidence of Detective Bernard's forgery of Mr. Beasley's initials, and he took advantage of these opportunities on several other occasions. At the trial, the Petitioner sought to introduce evidence of the allegations that Detective Bernard forged police reports. The trial court excluded the evidence because it was irrelevant. On appeal, the Petitioner challenged the trial court's refusal to admit the evidence, but this court affirmed the trial court's decision. As the record shows, the Petitioner's lack of success in impeaching Mr. Beasley was due to a lawful exercise of courtroom discretion. This does not give the Petitioner grounds for post-conviction relief.

Davis III, 2010 WL 1947379, at *2.  This court concluded that "the Petitioner had a full and fair hearing on Mr. Beasley's alleged perjury."  Id. at *4.

On October 5, 2009, the Petitioner filed a petition for writ for error coram nobis arguing that "because he did not receive the police reports from which Mr. Beasley refreshed his memory until after trial and because he did not receive the handwriting expert's report until June 3, 2009, the discovery that the 'EB' was not Mr. Beasley's initials amounted to new evidence."  Phedrek T. Davis v. State, No. M2009-02310-CCA-R3-CO, 2010 WL 3270015, at *1 (Tenn. Crim. App. Aug. 19, 2010) ("Davis IV").  The coram nobis court summarily dismissed the petition "stating that the evidence presented by the [P]etitioner was not 'newly discovered' noting that the statement containing the initials had been presented at trial and litigated at trial and on appeal."  Id.  In affirming the coram nobis court's dismissal, this court stated the following:

> We agree that the evidence presented by the [P]etitioner is not "new" evidence. By the [P]etitioner's own admission, he obtained the document containing the initials at trial.  Petitioner certainly had an opportunity to cross-examine Mr. Beasley about whether he initialed the statement but apparently did not. Further, the statement at issue was an oral statement given to law enforcement officers by Mr. Beasley and memorialized by Detective Bernard.  Whether Mr. Beasley incorrectly identified the initials, he never altered his account of what happened.  The purportedly "new" evidence from the [P]etitioner does not change these circumstances, and the coram nobis court did not abuse its discretion in ruling that the petition should be dismissed.

Id. at *3.

On April 27, 2011, the Petitioner filed the petition for writ of error coram nobis at issue in this case.  Attached to the petition was an affidavit sworn by Mr. Beasley in which Mr. Beasley stated that he "testified at trial that [he] initialed a police report that was prepared by [D]etective E.J. Bernard but [he] did not initial any statement or report"; that he also "testified that [the Petitioner] threaten[ed] to kill everybody, but [he] never heard [the Petitioner] threaten to kill anybody"; and that he admitted that he "testified falsely at trial." The Petitioner argued that this affidavit constituted newly discovered evidence that would have been essential to his defense because Mr. Beasley "was the only material witness at trial to offer substantive evidence to support" premeditation and that Mr. Beasley's testimony that he initialed the statement amounted to an adoption of "the contents of the report as being information that he gave to Detective Bernard on the day of the homicide."  The coram nobis court summarily dismissed the petition concluding that the "issue [had] been previously

adjudicated several times, thus, the [P]etitoner [was] not entitled to relief by subsequent filing of petition for writ of error coram nobis."

ANALYSIS

On appeal, the Petitioner contends that the coram nobis court erred by summarily dismissing his petition and argues that "the jury would have convicted him of second degree murder had the jury not been presented with Mr. Beasley's lie." The Petitioner further contends that Mr. Beasley's affidavit constitutes newly discovered evidence. The State responds that the Petitioner's claims have been previously determined; therefore, they are not cognizable in a coram nobis proceeding.

A writ of error coram nobis is an extraordinary remedy available only under very narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105 (2006); see State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The purpose of a writ of error coram nobis "is to bring to the court's attention a previously unknown fact that, had it been known, would have resulted in a different judgment." Cyrus Deville Wilson v. State, - - S.W.3d - -, No. M2009-02241-SC-R11-CO, 2012 WL 1377373, at *4 (Tenn. Apr. 20, 2012). The decision to grant or deny the writ rests within the discretion of the trial court. Teague v. State, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988).

Coram nobis claims are "singularly fact-intensive" and "are not easily resolved on the face of the petition and often require a hearing." Freshwater v. State, 160 S.W.3d 548, 554 (Tenn. Crim. App. 2004) (quoting Harris v. State, 102 S.W.3d 587, 593 (Tenn. 2003)). However, a petitioner is not automatically entitled to an evidentiary hearing by simply filing a petition for writ of error coram nobis. See Teague v. State, 772 S.W.2d 915, 922 (Tenn. Crim. App. 1988); see also Cole v. State, 589 S.W.2d 941, 943 (Tenn. Crim. App. 1979) (concluding that the coram nobis court did not err in summarily dismissing the petition because the victim's post-trial statement was not "newly discovered evidence"). Instead, the petition must "demonstrate that the petitioner is entitled to the extraordinary relief that the writ provides." Harris v. State, 301 S.W.3d 141, 150 (Tenn. 2010) (Koch, J., concurring) (citations omitted).

Recanted testimony may qualify as newly discovered evidence and justify the granting of a writ of error coram nobis. Mixon, 983 S.W.2d at 672. However, newly discovered recanted testimony will only justify the granting of a writ of error coram nobis and a new trial if:

-4-

(1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after trial; and (3) the jury might have reached a different conclusion had the truth been told.

Id. at 673 n.17. The coram nobis court did not abuse its discretion in summarily dismissing the petition for writ of error coram nobis because Mr. Beasley's affidavit failed to satisfy the Mixon factors. Furthermore, we agree with the coram nobis court that the issues raised in the petition have been previously litigated and determined in several prior proceedings.

With respect to the Petitioner's contention that Mr. Beasley lied when he testified that the Petitioner threatened to kill everyone, the Petitioner cannot claim to have been surprised by the alleged false testimony or unable to know of the falsity of the testimony until after trial. Mr. Beasley testified that he was "not positive" when asked if the Petitioner used the word "kill." Davis I, 2007 WL 2051446, at *14. In fact, even after being shown his statement to police, Mr Beasley "continued to equivocate over whether [the Petitioner] had used the word 'kill' in his threat." Id. at *15. Mr. Beasley only testified that he told the police the Petitioner had used the word "kill" and that he thought that was what the Petitioner had said. Id. at *14-15. Furthermore, despite the Petitioner's assertions, testimony about whether he used the word "kill" was not the only evidence of premeditation. Mr. Beasley testified that the Petitioner told the victim, "[B]itch, I'm going to get you, don't be in this house when I come back." Davis II, 266 S.W.3d at 898. Additionally, a second witness testified that the Petitioner said, "[W]hen I come back I'm going to shoot this m----- f----- up."[1] Id. at 899. Therefore, a jury would not have reached a different conclusion had Mr. Beasley testified that the Petitioner never used the word "kill."

With respect to the Petitioner's contention that Mr. Beasley lied when he testified that he initialed his statement, the Petitioner has litigated the issue that the statement or the initials on the statement were a forgery on direct appeal to this court, in a post-conviction proceeding, and in a prior petition for writ of error coram nobis. Therefore, the Petitioner cannot claim to be surprised by Mr. Beasley's allegedly false testimony regarding the initials on the police statement. In fact, the Petitioner challenged the falsity of the initials at trial. Furthermore, as this court has previously noted, regardless of who initialed the statement, Mr. Beasley testified that the written statement accurately reflected what he orally told the police.

---

[1] In his reply brief, the Petitioner asserts that the witness never testified to this statement and that the State has fabricated evidence against him. However, the fact that the opinions from both this court and our supreme court quote the witness's testimony belies this assertion.

Whether Mr. Beasley did or did not initial the statement would not change the substance of that testimony. Accordingly, we conclude that the coram nobis court did not abuse its discretion in summarily dismissing the petition.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE