IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 10, 2012

## LARRY PAYNE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 04-01217     J. Robert Carter, Jr., Judge**

---

**No. W2011-01080-CCA-R3-PC  - Filed February 8, 2013**

---

The petitioner, Larry Payne, was convicted by a jury of four counts of aggravated robbery, Class B felonies, against two victims.  On direct appeal, the Court of Criminal Appeals merged the four convictions into two, one for each victim, and otherwise affirmed the judgments.  The Tennessee Supreme Court declined discretionary review.  The petitioner then brought this timely post-conviction petition, asserting various claims of ineffective assistance of counsel.  The petitioner's sole issue on appeal is whether he was denied the effective assistance of counsel due to his trial counsel's failure to request a jury instruction on the lesser included offense of theft.  After a thorough review of the record, we conclude that the petitioner has not established any prejudice resulting from his counsel's failure to request a jury charge on the lesser included offense of theft.  The petitioner's failure to establish prejudice is fatal to his ineffective assistance claim.  The judgment of the court below is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

R. Todd Mosley, Memphis, Tennessee, at trial and on appeal; and Eran E. Julian, Memphis, Tennessee, at trial, for the appellant, Larry Payne.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; David Zak and Betsy Weintraub, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was convicted for participating in a robbery that took place at a Memphis bakery in October of 2003. Emma Brown, an employee, was at work around midnight when a man named David Hicks came to the locked bakery door. Because she was familiar with the man and was acquainted with his aunt, she unlocked the door, at which point another man, who had a gun and a bandana tied around his face, forced his way into the store. The masked man and Mr. Hicks proceeded to rob Ms. Brown, then threatened to shoot her unless her friend Marvin Qualls gave them the keys to his Dodge Durango. After taking the keys from Mr. Qualls and taking money from Mr. Qualls and from Ms. Brown, the men left. Ms. Brown also testified to having seen a third man briefly enter and leave the store during the robbery. Ms. Brown was able to tell police the name of Mr. Hicks' aunt, and Mr. Hicks' aunt in turn gave the police information about Mr. Hicks, as well as the petitioner and another man, who were Mr. Hicks' half-brothers. Acting on an anonymous tip, police located Mr. Qualls' Dodge Durango; the petitioner was driving the car but denied any involvement with the robberies.

Ms. Brown was able to identify the petitioner from a photographic array about a week after the robberies. Although she testified that a bandana had obscured his face below the eyes, she stated she was able to make a positive identification based on his large head and the visible portion of his face. Ms. Brown also identified the petitioner from among a group of approximately five inmates at a preliminary hearing and then identified him at trial, when the petitioner, who had been excluded from the courtroom for unruly behavior, was brought into her line of sight by detention personnel. Mr. Qualls was not able to identify the petitioner from a photographic array. However, Mr. Qualls did identify the petitioner when he saw him in person at the preliminary hearing and at trial under the circumstances described above. Mr. Qualls denied being present for Ms. Brown's identification at the preliminary hearing but acknowledged he had discussed the events of the robbery with her.

At trial, the petitioner testified that about two weeks prior to the robberies, Ms. Brown, to whom he had sold crack cocaine in the past, asked him to participate in a robbery of her employer's store. According to the petitioner, he had told Ms. Brown that he would not do it unless she paid him money up front. Because she did not have the money, he refused her request. The petitioner denied participating in the robberies. He stated that his half-brother Mr. Hicks was at their aunt's house on the day of the robberies and left with some men. According to the petitioner, a man named Nick returned with Mr. Hicks and the Dodge Durango around 11:30 p.m., and Nick then traded the Dodge Durango to the petitioner to use for a few days in exchange for crack cocaine. The petitioner testified that he did not care at the time if the vehicle was stolen because he intended to return it to Nick.

Prior to closing arguments, the trial court discussed the jury charge with the parties. One of the petitioner's attorneys brought up lesser include offenses: "Can I inquire the other

lesser includeds you anticipate – . . . ." The trial court stated it would charge simple robbery. Trial counsel did not object or ask for any other lesser included offense. During deliberations, the jury sent a written question to the trial court: "[H]ung on witness' ID of armed robber – is there a lesser charge – maybe receiving stolen goods – possession of stolen property?" The trial court instructed the jury to resume deliberations under the charge as it had been given, noting that the jury should consider the greater charge first, and if it had reasonable doubt as to the petitioner's guilt, should acquit on that charge and then consider the lesser included offense of robbery. The jury resumed deliberations and convicted the petitioner of four counts of aggravated robbery. The petitioner was sentenced to eighteen years' imprisonment for each count, with the two counts for each victim running concurrently to each other but consecutively to the counts for the other victim, for an effective thirty-six years. On direct appeal, the petitioner asserted that the evidence was insufficient to support his convictions, that the court erred by requiring law enforcement officers to sit next to him, and that his sentences were excessive. The convictions for each victim were merged, and the convictions and sentences were otherwise affirmed. The Tennessee Supreme Court declined discretionary review.

The petitioner then brought a timely post-conviction petition asserting various ways in which he believed his counsel had been constitutionally ineffective. The post-conviction court appointed counsel and counsel amended the petition twice. The petitioner's original post-conviction attorney then moved to withdraw based on another amendment to the petition, which the attorney believed had been filed by the petitioner and on which post-conviction counsel's signature had been forged. The post-conviction court granted the motion and current counsel was appointed. The post-conviction court held evidentiary hearings[1] at which the petitioner and his trial counsel testified. Trial counsel testified that there was no strategic reason to omit theft of property as a lesser included offense and that in hindsight, she would have requested theft to be charged. The post-conviction court concluded that the petitioner's attorney had not performed deficiently and that there was no prejudice to the petitioner.

**Analysis**

Tennessee's Post-Conviction Procedure Act allows a petitioner to challenge a sentence which is void or voidable because the petitioner's constitutional rights were violated. T.C.A. § 40-30-103. In bringing a post-conviction petition, the petitioner bears the burden of proving by clear and convincing evidence the allegations of fact upon which relief is founded. *Id.* at § 40-30-110(f). While a post-conviction court's findings of fact are conclusive on appeal

---

[1]The order denying post-conviction relief states that the post-conviction court heard proof on the matter on three different dates, January 6, 2011; March 11, 2011; and April 1, 2011. Only two transcripts, those of the January and April hearings, are included in the record.

unless the evidence preponderates otherwise, legal conclusions and mixed questions of law and fact, such as claims of ineffective assistance of counsel, are reviewed de novo with no presumption of correctness. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

A defendant has the right to be represented by counsel under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. The right to counsel is the right to "reasonably effective" legal assistance, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and counsel's performance must fall "within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To obtain relief based on a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687. Deficiency requires a showing that counsel's errors were so serious that counsel was not functioning as the counsel guaranteed by the Constitution. *Id.* Review of counsel's performance should be "highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). The second prong, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner's failure to establish either deficiency or prejudice is fatal to his or her claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. *Goad*, 938 S.W.2d at 370.

Petitioner's trial counsel did not request the trial court to instruct the jury to consider theft as a lesser included offense of aggravated robbery, and petitioner asserts that trial counsel's failure to do so amounted to deficiency. Tennessee law provides that a person commits theft "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. Theft is elevated to robbery if it is accomplished "by violence or putting the person in fear." T.C.A. § 39-13-401(a). Robbery is "aggravated" if it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). Theft is a lesser included offense of robbery, which is in turn a lesser included offense of aggravated robbery. *State v. Hayes*, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999).

To satisfy the elements of theft, not only must the offender obtain or exercise control over the property, but the offender must do so knowingly. Conduct is knowing when "the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. §

39-11-302(b). Furthermore, there is an "inference of guilty knowledge permitted by the possession of recently stolen property." *State v. James*, 315 S.W.3d 440, 450 (Tenn. 2010). This permissive inference is not a mandatory presumption. *See id.* at 449-51 (concluding that "inference of knowledge that the property was stolen from the possession of recently stolen property is particularly suited to our current statute"). "An unsatisfactorily explained possession of very recently stolen property may, in the light of surrounding circumstances, support a conviction of larceny, as well as supply the element of guilty knowledge for the offenses of receiving stolen property or concealing stolen property." *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1978).

In urging deficiency, the petitioner notes that he testified that he came into possession of the stolen vehicle because a man named Nick had pawned it to him in exchange for cocaine. This proof, if accepted by a jury, might have been legally sufficient to support the elements of the offense of theft. While the record reflects that petitioner's trial counsel inquired concerning lesser included offenses generally, trial counsel never asked for the lesser included offense of theft to be charged, despite the trial court's statement that it only intended to charge simple robbery. Where the defendant's testimony centered around the idea that he had simply received stolen goods rather than committed aggravated robbery, an argument can be made that the petitioner's trial counsel's conduct in failing to request a theft instruction fell below the range of competence demanded of attorneys in criminal cases. On the other hand, the failure to request such an instruction might also reflect a strategic choice by counsel not to subject the petitioner to seemingly-certain punishment for criminal activity to which he had all but confessed on the stand.

However, we need not definitively resolve the issue of counsel's alleged deficiency, because the petitioner has not established prejudice based on his trial counsel's failure to request a theft instruction on the facts of this case. In reaching this conclusion, we are guided by the logic of the ongoing debate in this court over a related issue: the circumstances under which a trial court's failure to charge a lesser-included offense may constitute reversible error in a criminal case. On this subject, there presently exist two schools of thought. *Compare State v. Nathaniel Shelbourne*, No. W2011-02372-CCA-R3-CD (Tenn. Crim. App., Dec. 26, 2012) (majority opinion) *with id.* (Woodall, J., concurring).

The strict view is that the failure to charge a lesser-included offense can never constitute reversible error in a criminal case if the defendant has been found guilty of the greater offense. According to the strict view, juries are presumed to follow the instructions of the trial court. *See State v. Shaw*, 37 S.W.3d 900, 904 (Tenn. 2001). In accordance with the supreme court's holding in *State v. Davis*, 266 S.W.3d 896, 910 (Tenn. 2008), trial courts are mandated to "instruct the jury to consider the offenses in order from greatest to least within each count" and further instruct them that they "shall not proceed to consider any

lesser-included offense until [the jury] has made first a unanimous determination that the defendant is not guilty of the immediately-preceding greater offense." *Id.* at 910. Under this view, even if the jury had been charged with the lesser-included offense, it was prohibited from considering such until after it acquitted the defendant of the greater charge. A defendant's conviction of the greater charge is thus irrefutable proof that a trial court's failure to instruct on a lesser-included offense was harmless error. By the same reasoning, in post-conviction, a petitioner can never show that his trial counsel's failure to request a lesser included offense was prejudicial; the jury's conviction of the greater charge prohibited any consideration of a lesser charge, and consequently as a matter of law there was no possibility whatsoever—much less a reasonable probability—that but for counsel's failure to request the lesser-included offense the result of the proceeding would have been different.

The more permissive view does not completely rule out the possibility that a trial court's failure to charge a lesser included offense might constitute reversible error, but instead examines the facts and circumstances of each case. However, this case-by-case approach also acknowledges that *Davis* requires a jury to consider lesser-included offenses from greatest to least. Where some, but not all, lesser-included offenses have been charged by the trial court in a given case, and the defendant has nonetheless been convicted of the greater offense, even under the more permissive approach the trial court's failure to instruct the jury on a specific lesser-included offense is deemed harmless beyond a reasonable doubt. The jury's opportunity to consider an intermediate lesser-included offense, and its rejection of the same, stands as conclusive proof that it would not have convicted the defendant of offenses further down the chain of culpability. Under this view, a petitioner in post-conviction could not establish prejudice stemming from his counsel's failure to request a lesser-included offense so long as the jury had considered and rejected a greater lesser-included offense.

Regardless of which of these two views ultimately prevails, we conclude that the defendant in this case has not shown prejudice stemming from his trial counsel's alleged deficiency. The petitioner's jury was instructed on the lesser-included offenses of robbery, yet nonetheless convicted the petitioner of the greater offenses of aggravated robbery. Because the jury declined to convict the petitioner of mere robbery, it would not have been permissible for the petitioner's jury to have pondered the issue of whether the petitioner was guilty of theft, even had the petitioner's counsel successfully requested that the jury receive theft instructions.

The defendant has not shown that, but for his counsel's failure to request an instruction on the lesser-included offense of theft, the result of his proceeding would have been different. The petitioner's claim that he received ineffective assistance of counsel is denied.

**CONCLUSION**

-6-

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____
JOHN EVERETT WILLIAMS, JUDGE