IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 21, 2016 Session

**STATE OF TENNESSEE v. ROY DANIEL MAYO II**

**Appeal from the Circuit Court for Cheatham County**
**No. 17204     Suzanne Lockert-Mash, Judge**
_____

**No. M2015-02267-CCA-R3-CD – Filed September 26, 2016**
_____

A jury found the Defendant, Roy Daniel Mayo II, guilty of one count of attempted burglary, a Class A misdemeanor; one count of possession of burglary tools, a Class A misdemeanor; and one count of evading arrest while operating a motor vehicle, a Class E felony.  The trial court imposed an aggregate sentence of six years in prison.  The Defendant does not challenge his misdemeanor convictions.  On appeal, he asserts that his evading arrest conviction should be reversed because the trial court's jury instructions did not require the jury to find that the Defendant's flight took place while he was operating the motor vehicle.  Given the facts surrounding the Defendant's conviction, in particular the proof regarding whether his flight was by means of a vehicle or on foot, we conclude that the jury instructions failed to fairly submit the legal issues and misled the jury as to the applicable law and that the error was not harmless.  We accordingly reverse the Defendant's felony evading arrest conviction, and we remand for new trial on that charge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Michele Hodges (on appeal), Nashville, Tennessee; and Jack Arnold  (at trial), Ashland City, Tennessee, for the appellant, Roy Daniel Mayo, II.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; W. Ray Crouch, District Attorney General; and Margaret Sagi, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The Defendant's convictions are the result of a chance encounter with law enforcement on the interstate. On January 17, 2014, at approximately 11:30 a.m., Investigator Travis Walker was responding to an unrelated dispatch. Because he was responding to a potential crime scene, Investigator Walker was driving down Interstate 24 with his lights and sirens activated. Investigator Walker drove an unmarked car, but testified that, with the emergency equipment activated, a person "c[ould not] mistake" it for a civilian vehicle. He testified that he was traveling over seventy miles per hour and that the surrounding traffic looked "like a bunch of ants trying to scatter" to permit him to proceed.

While traffic was pulling over, Investigator Walker noticed a red car with a white sports utility vehicle ("SUV") parked behind it at the side of the road. A man ran from the passenger's side of the red car and entered the driver's side of the SUV. Investigator Walker did not suspect any criminal activity at this point, but the SUV then "pull[ed] out in front of everybody." The SUV entered the interstate traffic from the right shoulder, driving "quick in front of oncoming traffic." Investigator Walker testified that he shut off his sirens when he saw the SUV pulling out "to try to help the situation." When the SUV drove "in the middle of two lanes," he turned his siren back on and pulled behind the car to signal it to stop. The SUV crossed to the left lane, and the vehicle moved partly into the grass and slowed down. The driver's door opened, and the Defendant jumped out while the vehicle was still in motion. The Defendant ran, but a woman remained in the SUV. Investigator Walker "guestimated" that the SUV came to rest one to two hundred yards from its location at the time the siren was activated. Chief Tad Wheeler confirmed that the SUV had stopped halfway in the left lane of travel and that a woman remained in the passenger's side of the vehicle.

Investigator Walker gave chase on foot, shouting numerous times, "[S]top[:] police." The Defendant entered a wooded area. During the chase, Investigator Walker ordered the Defendant to raise his hands. The Defendant complied but continued to run. The chase proceeded through a ravine, where Investigator Walker was unable to continue the pursuit.

After an officer picked up Investigator Walker, Investigator Walker returned to the vehicles, and he observed that the passenger's window in the red car was broken. In the SUV, law enforcement found a crowbar and a hammer on the passenger's side floorboard. Investigator Walker acknowledged he did not see the Defendant deposit anything on the passenger's side of the SUV.

Officer Dale Smith responded to the scene of the chase and recognized the woman who remained in the SUV. She identified the Defendant as the driver and stated they had just broken into a car. Officer Smith testified that a crowbar is "generally a burglary type tool," although he stated that it had non-criminal uses as well. He testified that the red car had a tag on it indicating that it had been identified as abandoned on January 16, 2014, at 4:13 p.m. He determined that the vehicle did not belong to the Defendant. Officer Smith identified a photograph he took which indicated the distance between where the red car was and where the white SUV ultimately came to a stop.[1] He acknowledged that some drivers might pull over to the left side of the road when signaled to stop by law enforcement. Officer Smith attempted to contact the red car's owner but had difficulty communicating with the owner due to a language barrier.

Deputy Ken Whitaker located the Defendant walking on a street that ran parallel to the interstate. The Defendant, who was an acquaintance, got in Deputy Whitaker's patrol car. The Defendant was out of breath and coughing.

The State presented the testimony of Ms. Belkis Guillen, who testified through a non-credentialed interpreter by prior agreement of the parties. The interpreter acknowledged that she had gotten "lost" regarding Ms. Guillen's testimony at one point. Ms. Guillen testified that she did not know the Defendant or give him permission to enter her car. She did not know if anything was missing from the car. Ms. Guillen's testimony indicated that she had returned to the car at least two times after it broke down, accompanied by her boyfriend and son. She testified that the window was not broken when the car malfunctioned. It was broken when they returned the next day. Ms. Guillen could not remember when she went back to the car. She clarified that the window was broken the second time they went back. She recalled that law enforcement called her boyfriend about getting the car back. She testified at first that this call was before they went back the second time and found the broken window and then testified the call was after they went back the second time.

The Defendant recalled Officer Smith, who testified regarding the abandoned vehicle. The Defendant also presented the testimony of Mr. Christian Rentis Guillen, Ms. Guillen's son. Mr. Rentis Guillen testified that they returned to the vehicle twice and that the sticker left by law enforcement was present the second time. He testified that the window was not broken either time they went back to the car.

The record does not include any colloquy regarding jury instructions. On November 24, 2015, the Defendant filed a document which appears to be a printout of an

---

[1] Due to technical issues and the fact that only digital copies of the exhibits were introduced into evidence, we were not able to view the photographs.

email forwarded from the Defendant's trial counsel to the Defendant's appellate counsel. The email originated with the trial judge's administrative assistant on December 9, 2014, attaching the proposed jury instructions for the parties to review. Trial counsel responded the same day by noting that the jury instructions did not appear to extend the requirement that the Defendant be operating a motor vehicle to the act of fleeing.

The jury was instructed:

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
>
> (1) that the defendant was operating a motor vehicle on a street, road, alley, or highway in this state;
>
> and
>
> (2) that while the defendant was operating such vehicle, the defendant received a signal from a law enforcement officer to bring the vehicle to a stop;
>
> and
>
> (3) that after receiving such signal, the defendant fled from and/or attempted to elude the law enforcement officer;
>
> and
>
> (4) that the defendant acted intentionally.

Defense counsel suggested changing subsection (3) to: "that, while the defendant was operating such vehicle, after receiving such a signal, the defendant fled from and/or attempted to elude the law enforcement officer." In an email sent two minutes later, defense counsel amended the suggestion to: "that, after receiving such a signal, while the defendant was operating such vehicle, the defendant fled from and/or attempted to elude the law enforcement officer." It is apparent from the instructions given that counsel's suggestion was not adopted.

The jury convicted the Defendant of attempted burglary rather than burglary as charged on Count 1. The jury found the Defendant guilty of possession of burglary tools and felony evading arrest in the other two counts. The Defendant was sentenced as a

persistent offender to concurrent sentences of eleven months and twenty-nine days for the misdemeanor offenses and six years for the felony offense. He filed a timely motion for a new trial, raising the issue regarding the jury instructions. The transcript of the hearing on the motion for a new trial is not part of the record on appeal, and we are left with the trial court's summary denial of the motion.

## ANALYSIS

On appeal, the Defendant argues that that the instructions, which were the pattern instructions at the time, were an incorrect charge of the law. The Defendant also appears to raise a sufficiency argument, contending that the proof did not show that any portion of the flight took place while he was operating a motor vehicle. Finally, he contends that failure to charge misdemeanor evading arrest was error.

### I. Jury Instructions on Felony Evading Arrest

The Defendant asserts that the jury charge regarding felony evading arrest was misleading in that it did not require the jury to find that the flight occurred while he was operating a motor vehicle and that this error requires reversal. The State argues that the issue is waived because the proof in the record is insufficient to establish that the instruction was requested.

The State relies on the appendix of the opinion in *State v. Robinson*, 146 S.W.3d 469, 509 (Tenn. 2004), for the proposition that an omission in the jury charge is waived if not raised prior to the time the charge is given. However, *Robinson* dealt with the omission of a charge related to accomplice testimony. *Id.* The intermediate court specifically distinguished this type of omission from a charge which is actually erroneous: "In contrast to an erroneous instruction or the failure to give a requested instruction, defense counsel cannot sit on an objection to an omitted charge and allege it as a ground in the motion for new trial." *Id.* Because the Defendant here alleges that the charge was a misstatement of the law, *Robinson* does not apply.

Instead, the issue of waiver is governed by Tennessee Rule of Criminal Procedure 30(b). Under Rule 30, a defendant has the right to file a request for special jury instructions. Tenn. R. Crim. P. 30(a). After the court has instructed the jury, the parties may lodge an objection to instructions which were given or to the failure to give requested instructions. "Counsel's failure to object does not prejudice the right of a party to assign the basis of the objection as error in a motion for a new trial." Tenn. R. Crim. P. 30(b). When a defendant challenges an erroneous or inaccurate jury charge, as opposed to an incomplete jury charge, Rule 30 allows the issue to be raised in the motion for a new trial even if no objection was made contemporaneously. *State v. James*, 315

S.W.3d 440, 446 n.2 (Tenn. 2010). While we agree with the State that the record is missing any colloquy on the jury instructions and missing the transcript of any hearing, including the hearing on the motion for a new trial, which would establish whether counsel did indeed request special instructions by email and did not subsequently abandon the request, we nevertheless conclude that the issue is not waived and proceed to address it.

A defendant has a right to a correct and complete jury charge. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). This right is constitutional in nature. *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). The trial court must present the propositions of law governing the case plainly to the jury, in such a manner as to enable the jury to comprehend the principles involved. *State v. Williamson*, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995). "Nothing short of this will 'satisfy the demands of justice' or the accused's constitutional right of trial by jury." *Id.* (quoting *Crawford v. State*, 44 Tenn. 190, 195 (1867)) (citation omitted). Because jurors are "usually untrained in the law and unfamiliar with its myriad intricacies," they depend on instructions from the trial court in deliberating. *State v. Davis*, 266 S.W.3d 896, 907 (Tenn. 2008). A jury instruction which misstates an element of an offense so as to lessen the State's burden of proof amounts to constitutional error. *State v. Page*, 81 S.W.3d 781, 789 (Tenn. Crim. App. 2002). "Whether jury instructions are sufficient is a question of law appellate courts review de novo with no presumption of correctness." *State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014).

The statute at issue states:

> (b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop.

T.C.A. § 39-16-603.

The Defendant points out that, after his trial, the pattern jury instructions were redrafted to address the ambiguity which was the subject of the Defendant's email to the court requesting special instructions.

The pattern instructions currently suggest the following language:

-6-

Any person who commits the offense of *[fleeing from][attempting to elude]* a law enforcement officer while operating a motor vehicle is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant was operating a motor vehicle on a *[street][road][alley][highway]* in this state;

and

(2) that while the defendant was operating such vehicle the defendant received a signal from a law enforcement officer to bring the vehicle to a stop;

and

(3) that after receiving such signal, the defendant, **while operating such vehicle**, *[fled from][attempted to elude]* the law enforcement officer;

and

(4) that the defendant acted intentionally.

7 *Tenn. Prac. Pattern Jury Instructions - Criminal* 27.05(b) (19th ed.) (emphasis added). At the time of trial, the pattern instructions were consistent with the instructions given by the trial court in section (3): "that after receiving such signal, the defendant *[fled from] [attempted to elude]* the law enforcement officer."

"Although the Pattern Jury Instructions do not have the force of law, our trial courts 'frequently use them as a source for jury instructions.'" *Davis*, 266 S.W.3d at 901 n.2 (quoting *State v. Rutherford*, 876 S.W.2d 118, 120 (Tenn. Crim. App. 1993)). Pattern jury instructions, which are not officially approved by the appellate courts or legislature, "should be used only after careful analysis." *State v. Hodges*, 944 S.W.2d 346, 354 (Tenn. 1997). Pattern jury instructions are only suggestions and "are not entitled to any particular deference on review." *State v. Rimmer*, 250 S.W.3d 12, 30 (Tenn. 2008). "Trial courts are not limited to the mere recitation of the pattern instructions," *James*, 315

S.W.3d at 446, and the Defendant is entitled to have the jury properly instructed to consider every issue of fact raised by the evidence, *Phipps*, 883 S.W.2d at 149-50.

We conclude that the instructions given to the jury were misleading. The statute makes it an offense "while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude" a law enforcement officer, "after having received any signal from the officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1). The adverbial clause "while operating a motor vehicle" modifies "to intentionally flee or attempt to elude." The statute does not require that the signal to stop be given while a defendant is operating a vehicle, but it does require that the flight occur while the defendant is operating a vehicle. The jury was instructed that it had to find that "while the defendant was operating such vehicle, the defendant received a signal from a law enforcement officer to bring the vehicle to a stop" and "that after receiving such signal, the defendant fled from and/or attempted to elude the law enforcement officer." Accordingly, the plain language of the jury instructions required a finding that the signal to stop occurred while the Defendant was operating a motor vehicle but did not require a finding that the flight occurred while the Defendant was operating a motor vehicle. This instruction was erroneous.

An error in instructing the jury is subject to harmless error review. *Cauthern v. State*, 145 S.W.3d 571, 600 (Tenn. Crim. App. 2004). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005). The primary consideration is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *James*, 315 S.W.3d at 446 (quoting *Rimmer*, 250 S.W.3d at 31). When the error is constitutional in nature, then the burden is on the State to prove harmlessness beyond a reasonable doubt. *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008); *Cauthern*, 145 S.W.3d at 600. Not every erroneous instruction "rises to the level of constitutional error." *Faulkner*, 154 S.W.3d at 60 (concluding that error in including nature-of-conduct language in instruction was not constitutional error). "The failure to instruct the jury on a material element of an offense," however, "is a constitutional error subject to harmless error analysis." *Id.* Due process requires the conviction to rest upon a jury determination that the defendant is guilty beyond a reasonable doubt of every element of the crime. *State v. Ducker*, 27 S.W.3d 889, 899 (Tenn. 2000).

We cannot conclude that the error here was harmless beyond a reasonable doubt. The testimony from Investigator Walker was that he was travelling down the interstate with his emergency equipment activated. The lights and siren were not a show of force as to the Defendant, however, and the other traffic on the interstate was in the process of moving to the side to allow the emergency vehicle to pass. After the Defendant pulled

into traffic, Investigator Walker stopped his siren to alleviate any confusion. The Defendant then traveled in the middle of two lanes, and Investigator Walker re-activated his siren and moved his car behind the Defendant's vehicle to signal him to stop. The Defendant slowed the vehicle so that it came to a stop within one to two hundred yards of Investigator Walker's signal to stop. The Defendant then fled the moving vehicle on foot. It is unclear if the conviction here reflected the jury's determination that the flight occurred in the vehicle or if the conviction merely reflected the determination that the Defendant fled by some means after receiving a signal to stop while operating a vehicle. The jury should have been taxed with determining whether any portion of the flight occurred while the Defendant was operating a motor vehicle, as required by statute. The instructions given to the jurors failed to fairly submit the legal issue and misled the jurors as to the applicable law, and we conclude that prejudice to the judicial process would result from affirming the conviction. Accordingly, we reverse the Defendant's conviction for felony evading arrest.

## II. Sufficiency of the Evidence

Although the Defendant does not categorize his argument as one addressing the sufficiency of the evidence, he does argue that he "did not flee in accordance with the statute," which "requires that the . . . flight occur while operating a motor vehicle." If the evidence is legally insufficient to support the conviction, then the conviction must be reversed without a remand for a new trial, as there were no lesser included offenses charged.

This court must set aside a finding of guilt by the trier of fact if the evidence is insufficient to support the finding beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court neither reweighs nor reevaluates the evidence, nor may it substitute its inferences for those drawn by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Id.* "This Court affords the State the strongest legitimate view of the evidence presented at trial and the reasonable and legitimate inferences that may be drawn from the evidence." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The statute at issue makes it an offense to evade arrest by vehicle:

(b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop.

T.C.A. § 39-16-603. As noted above, we agree with the Defendant that the State had to show that the intentional flight or attempt to elude law enforcement took place "while operating a motor vehicle."

The evidence at trial included testimony that Investigator Walker turned on his siren while driving behind the Defendant after he saw the Defendant pull into the traffic on the interstate. The reactivation of the siren initiated the seizure of the Defendant. The Defendant moved from the right shoulder across the interstate. As the Defendant's vehicle slowed down and began to enter the grassy section of the median on the left side of the road, the Defendant exited the moving vehicle and fled on foot. The Defendant did not ever actually stop the vehicle to yield to the officer's show of authority but instead jumped from the moving vehicle in order to avoid detention. We distinguish this fact pattern from a situation in which a defendant stops the vehicle to yield to the officer and then subsequently flees on foot. The Defendant's vehicle came to rest approximately one to two hundred yards from the place where Investigator Walker had initiated the seizure. We conclude that it falls to the jury to answer the question of whether driving for one to two hundred yards and jumping from the moving vehicle after being signaled to stop, under the circumstances as Investigator Walker described them, constituted flight. Accordingly, we do not find the evidence legally insufficient, and we remand for a new trial on the charge of felony evading arrest.

### III. Lesser Included Offenses

Finally, the Defendant asserts that he is entitled to relief because the trial court failed to charge the jury with the lesser included offense of misdemeanor evading arrest. The State responds that this issue is waived because the Defendant did not request the instruction and that misdemeanor evading arrest is not a lesser included offense of felony evading arrest. The propriety of instructing on lesser included offenses is a mixed question of fact and law reviewed de novo with no presumption of correctness. *State v. Thorpe*, 463 S.W.3d 851, 859 (Tenn. 2015).

Tennessee Code Annotated section 39-16-603(a) describes the misdemeanor offense and makes it a crime for

-10-

any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:

(A) Knows the officer is attempting to arrest the person; or

(B) Has been arrested.

T.C.A. § 39-16-603(a)(1).

At oral argument, the Defendant conceded that misdemeanor evading arrest is not a lesser included offense of felony evading arrest. We accept the Defendant's concession. *See State v. Gregory Dunnorm*, No. E2001-00566-CCA-R3-CD, 2002 WL 1298770, at *10 (Tenn. Crim. App. June 12, 2002) (concluding that the misdemeanor offense requires "a defendant to have been arrested or to have knowledge of his impending arrest at the time of his flight," while the felony offense requires no arrest but only "any signal" to stop, and holding that the misdemeanor offense was not a lesser included offense of the D felony offense under part (a) or (b) of the test articulated in *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999)); *State v. Tony Eric Pickett, Jr.*, No. E2012-01383-CCA-R3-CD, 2013 WL 5436818, at *8 (Tenn. Crim. App. Sept. 27, 2013) (concluding that the misdemeanor offense was not a lesser included offense of the Class E felony offense and that failure to instruct was not error); *see also State v. John J. Ortega, Jr.*, No. M2014-01042-CCA-R3-CD, 2015 WL 1870095, at *11 (Tenn. Crim. App. Apr. 23, 2015) *no perm. app. filed* (concluding that the exclusion of part (b) of the *Burns* test from Tennessee Code Annotated section 40-18-110(f) abrogates part (b) and "significantly reduces the number of lesser included offenses a trial court will be required to charge"); *State v. Fayne*, 451 S.W.3d 362, 368 n.5 (Tenn. 2014) (noting that "[s]ignificantly, the statutory definition set out in section 40-18-110(f) does not include part (b) of the *Burns* test," but pretermitting the issue of its abrogation because the offense at issue was a lesser included offense under part (a) of the *Burns* test); *State v. Glen B. Howard*, No. E2014-01510-SC-R11-CD, (Tenn. Dec. 11, 2015) (granting discretionary appeal and noting that the Court was interested in the question of whether part (b) of the *Burns* test was abrogated by statute).

Despite the concession that misdemeanor evading arrest is not a lesser included offense of felony evading arrest, the Defendant asserted at oral arguments that the jury should have been charged with the offense because the indictment did not cite subsection (b) of the statute and therefore permitted a conviction under the misdemeanor subsection (a). *See* T.C.A. § 39-16-603. We note that the indictment, however, specifically tracked the language of subsection (b), charging that the Defendant did, "unlawfully and intentionally, while operating a motor vehicle upon any street, road, alley or highway in

the State of Tennessee, flee and/or attempt to elude" law enforcement. Accordingly, there is no basis for the claim that the indictment encompassed misdemeanor evading arrest as a separate crime. The Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the Defendant's conviction for felony evading arrest is reversed, and the case is remanded for a new trial on that charge. The remaining convictions are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE