IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 12, 2025

## CHRISTOPHER TERRELL SHIPP v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2013-C-2700    Jennifer Smith, Judge**

_____

**No. M2023-01586-CCA-R3-PC**

_____

Christopher Terrell Shipp, Petitioner, was convicted of one count of criminally negligent homicide, one count of felony murder, two counts of attempted aggravated robbery, and one count of attempted second degree murder after a jury trial. He was sentenced to an effective sentence of life in prison. On direct appeal, Petitioner challenged the sufficiency of the evidence and the admission of the preliminary hearing testimony of one of the victims in the home invasion. *State v. Shipp*, No. M2016-01397-CCA-R3-CD, 2017 WL 4457595, at *1-2 (Tenn. Crim. App. Oct. 5, 2017), *perm. app. denied* (Tenn. Feb. 14, 2018). Petitioner filed a pro se petition for post-conviction relief seeking post-conviction relief on the basis of ineffective assistance of counsel. An amended petition filed after counsel was appointed raised additional claims, including a *Brady* claim based on the State's withholding of a witness statement before the preliminary hearing. After an evidentiary hearing, Petitioner sought removal of his appointed counsel. This Court denied Petitioner's application for an extraordinary appeal and the post-conviction court denied the petition for post-conviction relief. Eventually, Petitioner was allowed to proceed pro se on appeal. Because Petitioner has either waived his issues or failed to prove his allegations by clear and convincing evidence, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and JEFFREY USMAN, Sp. J., joined.

Leah Wilson, Nashville, Tennessee (at hearing); Christopher Terrell Shipp, Clifton, Tennessee, Pro Se (on appeal).

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In September of 2013, Petitioner was indicted for one count of first degree murder, one count of felony murder, two counts of attempted aggravated robbery, and one count of attempted first degree murder for his role in a January 2013 home invasion.

*Pre-trial and Trial Testimony*

One of the victims, Wendy Goodrich, testified at a preliminary hearing. She identified Petitioner as the assailant. She died shortly after the preliminary hearing and prior to trial. *Id.* at *1-2. After the preliminary hearing, Petitioner received a police report from the State as part of the discovery materials. The police report summarized the victim's interviews after the invasion. The victim described her attacker as having a "facial tattoo." *Id.* at *1. At trial, Petitioner objected to the introduction of the preliminary hearing testimony because he did not have a facial tattoo and because he did not have the police report at the preliminary hearing. As a result, he argued that he could not cross-examine the victim about her statement. *Id.* Petitioner argued that Tennessee Rule of Evidence 804 and the Confrontation Clause required exclusion of the preliminary hearing testimony. The trial court disagreed and permitted the State to use the preliminary hearing testimony at trial.

At trial, the proof presented by the State, including the preliminary hearing testimony of Ms. Goodrich, established that a home invasion occurred at a residence occupied by Dwight Bond, Ms. Goodrich, and her mother, Margaret Hatfield. *Id.* at *1-3. Ms. Hatfield knew that Mr. Bond was selling drugs from the residence. Ms. Hatfield was in her bedroom at the time of the home invasion. Ms. Hatfield met Petitioner one time prior to the incident and knew him as "Chris." She heard multiple gunshots before she heard Ms. Goodrich ask "Chris" why he would shoot her. Ms. Hatfield heard a male voice ask for the location of "the money" repeatedly. Ms. Hatfield did not see the attacker and could not identify the attacker's voice. *Id.* Ms. Hatfield stayed in her room until Ms. Goodrich "fell through the bedroom door." *Id.* Ms. Goodrich had gunshot wounds to the chest and hand. Ms. Hatfield called 911. She found Mr. Bond dead near the front door of the residence.

- 2 -

The first officer on the scene, Rodney Clark, talked to Ms. Goodrich who informed him that "Chris" shot her. *Id.* at *2. Three cartridge cases, a digital scale, and a bag of marijuana were found in the living room. Two bullets were recovered from the home. *Id.*

Ms. Goodrich was interviewed at the hospital by Detective Lindsey Farnow-Smith. *Id.* The detective testified that Ms. Goodrich reported that she heard "Chris" ask for the location of the "money" and tell someone to "get the weed" before she heard gunshots. *Id.* Ms. Goodrich recalled being shot when the perpetrator confronted her with a revolver. *Id.* She described the perpetrator as having a "facial tattoo" and told the detective that she was familiar with Petitioner because he came to the house to get haircuts. *Id.* She later identified Petitioner in a photographic lineup. None of the individuals in the photographic lineup had facial tattoos. Detective Farnow-Smith identified Petitioner in the courtroom. She acknowledged that he did not have a facial tattoo but testified that Petitioner had discoloration on his face that resembled "shadowing" near his "cheekbone and [had] facial hair."

Ms. Goodrich passed away prior to trial, so her preliminary hearing testimony was read into the record. According to her testimony, she had known Petitioner for a year or longer because he often bought marijuana from Mr. Bond. *Id.* at *1. Ms. Goodrich was in her bedroom on the night of the incident when she heard Mr. Bond exclaim, "[O]h sh*t" from the living room before she heard a "popping" sound. Ms. Goodrich then stated that Petitioner came to her bedroom and demanded money. When she explained that there was no money in the house, he pointed a revolver at her chest and shot her in the chest and the hand. *Id.* She fell to the ground. Ms. Goodrich saw Petitioner take money from Mr. Bond's pocket and marijuana from the living room. *Id.* at *2. Ms. Goodrich saw another assailant in the living room. She identified Petitioner in a photographic lineup but never identified the other intruder.

At the conclusion of the trial, Petitioner was convicted of criminally negligent homicide, felony murder, two counts of attempted aggravated robbery, and attempted second degree murder. *Id.* at *1-3. He was sentenced to an effective sentence of life in prison.

Petitioner appealed, challenging the sufficiency of the evidence and the admission of the preliminary hearing testimony. This Court affirmed the judgments but remanded for merger of the criminally negligent homicide conviction into the felony murder conviction. *Id.* at *1. The Tennessee Supreme Court denied permission to appeal.

Petitioner subsequently filed a pro se petition for post-conviction relief alleging various allegations of ineffective assistance of counsel. Counsel was appointed and an amended petition was filed. Petitioner then filed a pro se amended petition while

represented by appointed counsel. The amended pro se petition repeated some of the earlier claims and added additional allegations of ineffective assistance of counsel. The post-conviction court held a hearing.

*Post-Conviction Hearing*

Trial counsel testified that he was licensed to practice law in 2011 and that ninety-five percent of his practice was devoted to criminal law. Trial counsel testified that in 2020, he had health issues that required him to stop practicing law. At the time of Petitioner's trial, he worked with another lawyer[1] who had been practicing law since 1999. This lawyer handled Petitioner's preliminary hearing and trial counsel took the lead on Petitioner's case after the preliminary hearing. The other lawyer continued to be involved in Petitioner's case and participated in the trial.

Trial counsel described Petitioner's charges as "very, very serious." He met with Petitioner at least a dozen times prior to trial based in part on the "serious legal issues" involved and the fact that it was not a "simple case." Trial counsel explained that identification was a major issue at trial and the strategy was to use Ms. Goodrich's prior statements to impeach her identification of Petitioner. Trial counsel believed that he was prepared and ready to go to trial.

Trial counsel acknowledged that Petitioner filed a pro se speedy trial motion. Trial counsel did not think it would be successful because less than three years elapsed between Petitioner's arrest and the trial, a "pretty standard" period of time. Trial counsel noted that the case moved "pretty swiftly."

Petitioner, on the other hand, complained that trial counsel should have raised a speedy trial issue because of the delay. Petitioner took issue with the fact that he asked trial counsel to raise the speedy trial issue multiple times and trial counsel never complied with his request. Petitioner eventually filed a pro se motion for speedy trial and complained that neither trial counsel nor the trial court addressed the pro se motion. Petitioner insisted that he was prejudiced because Ms. Goodrich died after the preliminary hearing but prior to trial.

Petitioner complained that trial counsel had a conflict of interest because trial counsel had a prior criminal conviction. Petitioner insisted that he did not learn about trial counsel's criminal record until the day of the trial. According to Petitioner, a potential juror mentioned trial counsel's past during voir dire. Petitioner acknowledged that trial

---

[1] This lawyer did not testify at the post-conviction hearing.

counsel addressed the situation but insisted that if he had known about it prior to trial, he would have sought other representation.

Trial counsel admitted that he was convicted of aggravated robbery in 1996 but subsequently graduated from college, obtained a master's degree, and earned a law degree before passing the bar exam. Trial counsel stated that he discussed his past with his clients and that he likely mentioned it to Petitioner. Trial counsel did not recall if his criminal history was an issue at jury selection but noted that he is "hypersensitive" about his criminal past and would have taken remedial steps to address it if it came up. Petitioner raised voir dire issues for the first time in his pro se amended brief, which he filed while represented by counsel.

Petitioner also claimed that trial counsel failed to object to Detective Farnow-Smith's testimony about Petitioner's appearance, in particular his facial shadowing. Petitioner wished trial counsel had introduced a color photograph taken in close proximity to the incident. Petitioner admitted that trial counsel had him stand close to the jury so that they could observe his face. Trial counsel recalled that the defense theory was mistaken identity and recalled that Detective Farnow-Smith testified at trial that Petitioner did not have any facial tattoos.

Petitioner testified that trial counsel should have objected to the photographic lineup. Petitioner complained that his photograph was from a prior arrest and that the photograph could influence the jury because they could presume that he had a prior criminal history. The photo was not introduced at the hearing. Trial counsel could not recall if he raised any issue about the photographic lineup but recalled that the photographic lineup was positive for Petitioner because he did not have a facial tattoo in the photograph.

Petitioner testified that trial counsel failed to object to the jury instruction about lesser-included offenses and the deliberation process. However, Petitioner acknowledged that he was convicted of a lesser-included offense. Trial counsel testified that he did not see any "legal cause to challenge" the jury charge.

Petitioner next testified that trial counsel should have introduced Ms. Goodrich's prior statements as substantive evidence rather than as impeachment. Petitioner also complained that trial counsel did not object to the jury instruction about the impeachment of a witness. Petitioner thought the jury instruction "unfairly prevented the jury" from treating Ms. Goodrich's statements as substantive evidence.

Petitioner also testified that trial counsel failed to raise a *Brady* violation based on the State's failure to provide reports that contained Ms. Goodrich's statement before the preliminary hearing. Trial counsel explained that they did not know about the statement

or have a copy of it before the preliminary hearing. Trial counsel explained that this was customary practice in Davidson County because there was no discovery before the preliminary hearing. Trial counsel ultimately received a copy of the reports containing the statements after the preliminary hearing and prior to trial. Trial counsel explained that he tried to exclude Ms. Goodrich's preliminary hearing testimony but that the trial court denied the motion.

Petitioner next complained about the way trial counsel cross-examined the State's witnesses. Specifically, he did not think trial counsel adequately impeached Ms. Goodrich's identification of him at the preliminary hearing with her prior statement to officers. Petitioner acknowledged that trial counsel presented inconsistencies in Ms. Goodrich's statement and testimony. Petitioner also complained about trial counsel's cross-examination of Ms. Hatfield.

Trial counsel explained that he attempted to impeach Ms. Goodrich with the inconsistencies in her statement after the incident with her description of the assailant at a later time. Trial counsel testified that he cross-examined each witness appropriately.

Petitioner next testified that trial counsel failed to argue the cancellation rule and physical facts rule, specifically regarding Ms. Goodrich's statement and subsequent identification. Trial counsel did not recall those rules being considered but testified again that he attempted to point out discrepancies in Ms. Goodrich's identification of Petitioner as the perpetrator.

After the hearing, Petitioner sought removal of appointed counsel and filed a motion to proceed pro se. Petitioner then filed an application for permission to file an extraordinary appeal with this Court pursuant to Tennessee Rule of Appellate Procedure 10 alleging that the post-conviction court refused to hold an evidentiary hearing to resolve his request to proceed pro se. This Court denied the application for extraordinary appeal, finding that Tennessee Rule of Appellate Procedure 10 was not applicable because the post-conviction court had not ruled on the request to proceed pro se. The post-conviction court entered an order denying post-conviction relief. Petitioner filed another motion to remove counsel and proceed pro se. Petitioner subsequently filed another pro se amended petition. The post-conviction court entered an order dismissing the pro se amended petition for failing to meet the requirements to reopen a post-conviction proceeding. Petitioner filed a pro se motion for waiver of the timely notice of appeal with this Court. Petitioner alleged that he did not receive the post-conviction court's order dismissing the petition and that post-conviction counsel failed to file a notice of appeal. This Court ordered post-conviction counsel to file a notice of appeal within thirty days. In the meantime, Petitioner again sought to proceed pro se on appeal. This Court entered an order noting that post-conviction counsel failed to file a notice of appeal and accepted Petitioner's filing as timely. This

Court also remanded the matter to the post-conviction court to resolve Petitioner's timely request to proceed pro se. On remand, the post-conviction court held a hearing to determine whether Petitioner could proceed pro se. Petitioner executed a waiver of right to appellate counsel and the post-conviction court granted the motion for Petitioner to proceed pro se.

*Analysis*

*I. Ineffective Assistance of Counsel*

Petitioner presents multiple issues on appeal, the majority of which challenge the post-conviction court's determination on issues alleging ineffective assistance of counsel. We will address each of the ineffective assistance of counsel issues in turn.

The right to effective assistance of counsel is safeguarded by the constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

### A. Failure to Argue Motion for Speedy Trial

Petitioner complains that trial counsel was ineffective for failing to argue the pro se motion for speedy trial, particularly expressing concern over the fact that Ms. Goodrich died during the pendency of the case. The State contends that trial counsel made a "reasonable strategic decision not to demand a speedy trial" and Petitioner has failed to show he was prejudiced.

At the post-conviction hearing, Petitioner testified that he filed a pro se motion while represented by counsel and complained that trial counsel did not argue the motion. Petitioner insisted that the delay prejudiced his defense because Ms. Goodrich died before trial. Trial counsel testified that Petitioner's case was a "serious" case and that a speedy trial motion was not warranted, particularly because the case went to trial within three years, which he described as the typical time for a similar trial in Davidson County. Trial counsel did not think that a speedy trial motion would have been successful.

With respect to Petitioner's speedy trial claim, the post-conviction court noted that Petitioner complained that trial counsel failed to argue his pro se speedy trial motion. The post-conviction court found that Petitioner could not proceed pro se and be represented by counsel and found that counsel testified that pursuing a speedy trial issue would be unwise and unsuccessful. The post-conviction court found Petitioner was not entitled to relief because counsel's decision was reasonable. As to any underlying speedy trial claim, the post-conviction court deemed this issue waived for failing to pursue it on direct appeal.

The evidence does not preponderate against the findings of the post-conviction court. The preliminary hearing was held on July 11, 2013. Petitioner was indicted on September 23, 2013. Ms. Goodrich died on February 4, 2015. The case went to trial on February 8, 2016. Petitioner did not present any evidence that the case could have even been brought to trial before Ms. Goodrich's death and did not show how he was prejudiced by the length of time that transpired from his arrest to his trial. Moreover, trial counsel testified that the case went to trial within a typical time for a similar trial in Davidson County and opined that a speedy trial motion would not have been successful. Petitioner has not established his burden under *Strickland* and is not entitled to relief on this issue. Moreover, to the extent Petitioner attempts to raise a standalone speedy trial claim on post-conviction, we agree with the post-conviction court that this issue is waived for failing to present it on direct appeal. *See* Tenn. R. App. P. 36.

### B. Failure to Object to Detective Farnow-Smith's Testimony

Petitioner argues that trial counsel was ineffective for failing to object to Detective Farnow-Smith's testimony about the characteristics of Petitioner's face. Specifically, Petitioner claims that the detective's testimony was impermissible lay opinion testimony that attempted to explain inconsistencies in Ms. Goodrich's initial statement and later preliminary hearing testimony. The State, on the other hand, argues that Petitioner failed to show prejudice from trial counsel's "handling" of Detective Farnow-Smith's testimony.

This issue is waived. Petitioner failed to support his argument with citations to authorities. Tenn. Ct. Crim. App. R. 10(b).

### C. Failure to Object to or Seek Suppression of the Photographic Lineup

Petitioner next complains that trial counsel was ineffective for failing to object to the admission of the photographic lineup. Specifically, he takes issue with the fact that his photograph used in the lineup bore the date "December 13, 2012" and that it created a prejudicial inference that he had a prior criminal history. The State insists that Petitioner failed to prove prejudice where trial counsel made a strategic choice not to pursue suppression of the photographic lineup.

At the hearing, Petitioner testified that the lineup was irrelevant because Ms. Goodrich had already identified him. He also claimed that the lineup was prejudicial because it allowed jurors to infer from his mugshot that he had committed other crimes. Trial counsel testified that the photo lineup was beneficial because it "demonstrated [contrary to the victim's testimony] his [face] was free [of] facial tattoos." Trial counsel also remembered the photo being a regular mugshot and did not recall any mention of a

prior arrest. In fact, trial counsel testified he would have "objected vigorously to that if [he] heard that." The post-conviction court noted that Petitioner did not introduce the complained-of photographic lineup during the hearing. The post-conviction court found Petitioner did not establish "that there was anything other than his mugshot in the lineup" and that Petitioner failed to demonstrate trial counsel's decision to forego objection to the lineup was unreasonable. Petitioner's bald claims, without more, do not establish that a trial counsel was ineffective for failing to object to the mugshot. Petitioner is not entitled to relief on this issue.

### D. Failure to Admit Ms. Goodrich's Prior Statement as Substantive Evidence

Next, Petitioner complains that trial counsel was ineffective because he did not admit Ms. Goodrich's prior statement to police as substantive evidence. Specifically, Petitioner insists that Tennessee Rule of Evidence 803(26) permitted admission of the statement for the truth of the matter asserted as a prior inconsistent statement of a testifying witness and that if it were admitted, "no reasonable juror would have convicted" Petitioner. The State argues that the issue is waived because Petitioner failed to introduce any testimony about the prior statement and failed to introduce the prior statement as an exhibit at the post-conviction hearing.

We agree. We recognize that we can take judicial notice of the previous records of this Court. *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009). However, the prior statement is not in the record from the direct appeal and was not admitted as an exhibit to the post-conviction hearing. Petitioner has a duty to prepare a record which conveys a fair, accurate, and complete account of what transpired with respect to the issues forming the basis of the appeal. Tenn. R. App. P. 24. This issue is waived. Waiver notwithstanding, Petitioner has failed to establish prejudice. He did not establish a reasonable probability that had Ms. Goodrich's prior statement been introduced as substantive evidence, the result of the proceeding would have been different. Trial counsel made clear that Petitioner did not have any facial tattoos, despite Ms. Goodrich's assertion that the assailant had a facial tattoo. The jury was able to see Petitioner at trial, heard this evidence, and still found Petitioner guilty.

### E. Failure to Challenge Jury Instructions

Petitioner complains that trial counsel was ineffective for failing to request a jury instruction that permitted the jury to consider Ms. Goodrich's prior statement as substantive evidence. Petitioner also suggests counsel was ineffective for failing to object to the jury instructions about the deliberative process and lesser-included offenses. The State disagrees.

At trial, the trial court instructed the jury to consider Ms. Goodrich's prior inconsistent statement for impeachment purposes, not substantive evidence. The post-conviction court determined the trial court gave the instruction about impeachment of a witness by a prior inconsistent statement directly from the Tennessee Pattern Jury Instructions. Moreover, the post-conviction court determined that Ms. Goodrich's statement to police was clearly hearsay that could not be admitted for the truth of the matter asserted, so counsel was not ineffective for failing to object to the instructions. As we noted above, the prior statement is not in the record. Without showing that the statement should have been introduced as substantive evidence, Petitioner cannot establish prejudice or ineffective assistance of counsel based on counsel's failure to challenge the jury instruction on impeachment evidence.

With respect to Petitioner's insistence that counsel was ineffective for failing to object to the jury instructions on the deliberative process and lesser-included offenses, Petitioner complains that the trial court instructed the jury that the:

> [O]nly way you can move on to consider lesser included offenses is if you all [twelve] unanimously agree that the defendant is not guilty of the indicted offense, so you can't have the majority of people to say that you believe beyond a reasonable doubt [that he] is [] of the indicted offense, may be a couple who want to move on and see, well, let's look at these lesser included offenses and let's talk about [them], you can't do that. The only way you can move on is if you all [twelve] unanimously agree he is not guilty.

The post-conviction court could not "find this instruction was ever given by the trial judge" and even if it were, the instruction given by the trial court tracked the "acquittal first" instruction as required by our supreme court. *See State v. Davis*, 266 S.W.3d 896, 905-08 (Tenn. 2008). The evidence does not preponderate against the findings of the post-conviction court. In reviewing the transcript from the trial, we cannot find the instruction complained of by Petitioner in the record. However, the record reflects that the trial court gave the jury a instruction on deliberation that tracked the pattern jury instructions. *See* Tenn. Pattern Jury Instructions 41.01. Petitioner cannot establish prejudice. Petitioner is not entitled to relief on this issue.

## F. Failure to Allege a Brady Violation

Petitioner next alleges that trial counsel was ineffective for failing to allege a *Brady* violation relating to Ms. Goodrich's statement. The State disagrees.

At the hearing, trial counsel testified that discovery requests did not typically take place until after the preliminary hearing. Trial counsel did not represent Petitioner at the

preliminary hearing. It was handled by someone else in the office. The post-conviction court noted that another attorney who worked with trial counsel represented Petitioner at the preliminary hearing. This attorney did not testify at the post-conviction hearing. The post-conviction court pointed to the direct appeal, where this Court rejected a Confrontation Clause claim based on the State's failure to provide the police report prior to the preliminary hearing. On direct appeal, this Court concluded that the preliminary hearing testimony was just one detail on the issue of identity and that the jury had sufficient evidence, including information about the victim's prior statement concerning the facial tattoo, from which it could determine the credibility of the victim's preliminary hearing testimony. *Shipp*, 2017 WL 4457595, at *7-8.

The post-conviction court determined that trial counsel's actions were not unreasonable, and that Petitioner failed to prove prejudice. We agree. Pre-trial discovery does not apply to preliminary hearings. *See State v. Kibodeaux*, 680 S.W.3d 320, 335-37 (Tenn. Crim. App. 2023). Moreover, Ms. Goodrich was cross-examined at the preliminary hearing and Petitioner failed to call the attorney who represented him at the preliminary hearing at the post-conviction hearing. He did not establish prejudice. This issue is without merit.

To the extent that Petitioner attempts to raise the *Brady* issue as a standalone claim, this issue is waived for failing to raise it on direct appeal. *See* Tenn. R. App. P. 36(a); T.C.A. § 40-30-106(g).

### G. Failure to Argue the Cancellation Rule and the Physical Facts Rule

Petitioner argues on appeal that trial counsel was ineffective for failing to argue the cancellation rule and the physical facts rule to prevent the admission of Ms. Goodrich's preliminary hearing testimony. The State insists that this issue is not properly before this Court and, in any event, that Petitioner is not entitled to relief.

The post-conviction court did not address this issue directly in its order denying post-conviction relief. In reviewing Petitioner's issues, the post-conviction court noted that Petitioner attempted to file several pro se pleadings and/or amended petitions while being represented by counsel. The post-conviction court refused to address the issues raised in Petitioner's pro se filings.

We have reviewed the record. Petitioner raised this issue for the first time in an amended pro se petition for post-conviction relief while represented by counsel. The issue was briefly addressed during the hearing, but the post-conviction court did not rule on the issue.

The post-conviction court warned Petitioner that he could not proceed pro se while represented by counsel and chose not to address the issue. *See State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976). As we noted previously, it appears that the pro se amended petition was incorporated in a motion filed by counsel. In any event, Petitioner is not entitled to relief. The rule of cancellation applies only to contradictory sworn statements. *See State v. Finch*, 465 S.W.3d 584, 603-04 (Tenn. Crim. App. 2013). Here, Petitioner argues that Ms. Goodrich's statements are contradictory, but only one of her statements, the preliminary hearing testimony, was sworn. Thus, the rule does not apply, and counsel cannot be ineffective for failing to raise it. Likewise, the physical facts rule does not apply. The physical facts rule requires testimony to be "unbelievable on its face, i.e. testimony as to facts or events that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." *State v. Allen*, 259 S.W.3d 671, 680 (Tenn. 2008). When testimony is "capable of different interpretations, the matter should be left for the jury to decide. . . ." *State v. Hornsby*, 858 S.W.2d 892, 895 (Tenn. 1993). Trial counsel testified that Petitioner's identity was the main issue at trial. While Ms. Goodrich testified Petitioner had a facial tattoo, Detective Farnow-Smith described Petitioner as having discoloration on his face like "shadowing." Trial counsel highlighted the discrepancies in the testimony. Petitioner has failed to establish prejudice. Petitioner is not entitled to relief.

## H. Failure to Introduce Evidence to Impeach Witnesses Ms. Goodrich and Ms. Hatfield

Petitioner insists that trial counsel was ineffective for failing to introduce evidence that would impeach the testimony of both Ms. Goodrich and Ms. Hatfield, failing to properly cross-examine Ms. Hatfield with her prior statement, and failing to impeach Ms. Goodrich's description of Petitioner and his car.

From the post-conviction court's order, it does not appear that the post-conviction court directly addressed this issue, first raised in the initial pro se petition for relief. Though a post-conviction court is required to make written findings of fact and conclusions of law about each ground raised, T.C.A. § 40-30-111(b), the failure of a post-conviction court to fulfill this requirement does not necessarily mandate reversal of the trial court's judgment. *Dean v. State*, No. W2022-01513-CCA_R3-PC, 2023 WL 6876732, at *5 (Tenn. Crim. App. Oct. 18, 2023), *perm. app. denied* (Tenn. Mar. 6, 2024). A remand is not required if the record is adequate for review, even where the post-conviction court failed to comply with the rule. *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). Here, we determine that the record is adequate to facilitate review.

Petitioner testified at the hearing that trial counsel allowed Ms. Goodrich to identify him and Ms. Hatfield to testify that she heard Ms. Goodrich ask why "Chris" was "doing this." Petitioner testified that trial counsel should have "cross-examine[d]" the witnesses

- 13 -

about their "inconsistency." He claims trial counsel "didn't ask [any] meaningful questions to [anybody]." At the post-conviction hearing, trial counsel explained the theory of the defense and the trial strategy he employed to cross-examine witnesses. Specifically, trial counsel recognized that identity was the central issue in the case, explaining that the defense theory focusing on misidentification was important. Trial counsel testified that he paid particular attention to Ms. Goodrich's statement that the perpetrator had a facial tattoo, and sought to belabor the point that Petitioner did not have a facial tattoo throughout the trial.

The decision of whether to cross-examine a witness, as well as what matters to inquire into on cross-examination, is a "strategic[ ] or tactical choice, if informed and based upon adequate preparation." *Pierce v. State*, No. M2005-02565-CCA-R3-PC, 2007 WL 189392, at *7 (Tenn. Crim. App. Jan. 23, 2007) (citations omitted), *no perm. app. filed*. These strategic decisions "are judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time." *Reeves v. State*, No. M2004-02642-CCA-R3-PC, 2006 WL 360380, at *10 (Tenn. Crim. App. Feb. 16, 2006), *perm. app. denied* (Tenn. May 30, 2006). A petitioner alleging the ineffective assistance of counsel based on cross-examination decisions must show "what additional beneficial evidence could have been elicited" through his preferred method of cross-examination and must present that witness at the post-conviction evidentiary hearing to demonstrate how that witness would have responded. *See Ortiz v. State*, No. M2020-01642-CCA-R3-PC, 2021 WL 5080514, at *4 (Tenn. Crim. App. Nov. 2, 2021), *perm. app. denied* (Tenn. Jan. 14, 2022); *see also Britt v. State*, No. W2016-00928-CCA-R3-PC, 2017 WL 1508186, *4, *7 (Tenn. Crim. App. Apr. 25, 2017) (finding that absent testimony showing how a witness would have responded to a petitioner's preferred method of cross-examination, "any assumption about what she would have said at trial is speculative at best") (citing *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)), *no perm. app. filed*. Petitioner cannot show prejudice where he failed to present either Ms. Hatfield or any of the officers who interviewed Ms. Goodrich at the hearing to show what counsel would have or could have elicited through cross-examination. Petitioner is not entitled to relief on this issue.

## I. *Failure to Introduce Evidence that Ms. Goodrich's Boyfriend had Facial Tattoos*

Petitioner complains on appeal that the post-conviction court erred when it "concluded that [t]rial counsel was not ineffective for failing to introduce evidence of how the victim, who was [Ms. Goodrich's] boyfriend, had copious facial tattooing." The State argues that Petitioner is not entitled to relief because he failed to introduce a photograph of the boyfriend, Mr. Bond, or other evidence of the tattoos at the hearing.

Petitioner has waived this issue. The section of his brief on this issue is not supported by argument or citation to authority. Tenn. Ct. Crim. App. R. 10(b). Moreover,

Petitioner cannot prove prejudice caused by trial counsel's failure to introduce evidence when the evidence was not introduced at the post-conviction hearing.

*Cumulative Error*

As part of his section on ineffective assistance of counsel, Petitioner argues he is entitled to cumulative error relief. Because we have found no deficiencies, Petitioner is not entitled to cumulative error relief.

*II. Standalone Claims*

*Access to Voir Dire Transcripts*

Petitioner raises several issues unrelated to ineffective assistance of counsel. First, he argues that the post-conviction court erred by denying his request for transcripts from jury selection. Petitioner insists that a potential juror mentioned trial counsel's prior criminal conviction during voir dire and that as a result, trial counsel had a "conflict of interest," and the jury harbored an "inexorable bias" against Petitioner. On appeal, Petitioner claims that the transcripts were necessary for him to develop his argument at the post-conviction hearing. The State, on the other hand, argues that the post-conviction court properly denied the request after finding that the transcripts were irrelevant and that the issue was waived because it was not raised in the petition.

This issue was not raised in the initial pro se petition or in the amended petition filed by counsel. Instead, Petitioner attached documents to a pro se motion to remove counsel that mentioned conversations with counsel about voir dire and possible pro se filings about voir dire. Eventually, Petitioner attempted to raise the issue in a pro se amended petition while represented by counsel. In a reply brief, Petitioner insists that the pro se amended petition was incorporated into an amended petition filed by counsel. Examining the record, an "Amended Petition for Post-Conviction Relief" was filed on May 7, 2023. This document incorporates an attached amended pro se petition.[2]

Again, the post-conviction court warned Petitioner that he could not proceed pro se while represented by counsel. *Burkhart*, 541 S.W.2d at 371. The post-conviction court chose not to address the issue. We agree that this court does not have the authority to consider a post-conviction issue that was not raised in the original petition or a recognized amendment. *State v. Bristol*, 654 S.W.3d 917, 927 n.4 (Tenn. 2022). However, it appears that this pro se amended petition was properly before the post-conviction court. Despite

_____

[2] Strangely, this document lists Petitioner's name in the caption, but in the first sentence lists the petitioner as "Roderick Chadwick."

this issue being properly before the court, Petitioner is not entitled to relief as the record provided to this Court does not demonstrate that a proper timely request was made for the transcripts. Moreover, Petitioner failed to call any jurors to testify at the post-conviction hearing, and trial counsel testified at the hearing about his past and how he would have addressed it if mentioned during voir dire.

*Requests to Proceed Pro Se*

Petitioner argues that the post-conviction court abused its discretion in arbitrarily denying his "multiple timely and proper requests to proceed pro se." Specifically, he insists that the lower court allowed him to proceed pro se "in a half-cocked unofficial capacity" by "entertaining only certain open court colloquies and certain pleadings" in an "arbitrary and bizarre manner" that prevented him from presenting his issues properly. The State argues that the post-conviction court properly denied Petitioner's untimely request.

Here, Petitioner filed the pro se petition for relief in 2019. Counsel was appointed and an amended petition was filed in 2021. On March 23, 2023, Petitioner filed an amended pro se petition while represented by counsel. The post-conviction court held hearings on the initial pro se petition and amended petition on May 11 and June 8, 2023. Petitioner first sought to proceed representing himself and without counsel on June 23, 2023.

Ordinarily, a criminal defendant has a right to be represented by counsel or to represent himself and proceed pro se without the assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). The right to represent oneself exists "despite the fact that its exercise will almost surely result in detriment to both the defendant and the administration of justice." *State v. Hood*, No. W2004-01678-CCA-R3-DD, 2005 WL 2219691, at *11 (Tenn. Crim. App. Sept. 13, 2005) (quoting *State v. Fritz*, 585 P.2d 173, 177 (Wash. Ct. App. 1978)). This right is not without limitation. To activate the right of self-representation, a defendant must: (1) timely assert the right to proceed pro se; (2) clearly and unequivocally exercise the right; and (3) knowingly and intelligently waive his or her right to assistance of counsel. *State v. Herrod*, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988). Of course, there is no constitutional right to counsel in post-conviction proceedings, and "'there is no constitutional right to effective assistance of counsel in post-conviction proceedings.'" *State v. Stokes*, 146 S.W.3d 56, 60 (Tenn. 2004) (quoting *Burford v. State*, 845 S.W.2d 204, 207 (Tenn. 1992)). All that "due process requires in the post-conviction setting is that the petitioner have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* at 61 (quoting *House*, 911 S.W.2d at 711). Petitioner's request, *after* multiple hearings and nearly four years, was untimely.

The post-conviction court properly denied the request.  Moreover, Petitioner was successful in proceeding pro se on appeal.  Petitioner is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE